**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**SIDNEY MCKINNEY,**
**Claimant Below, Petitioner**

**vs.)    No. 21-0222** (BOR Appeal No. 2055673)
                    (Claim No. 2019010654)

**PINNACLE MINING CO./MISSION COAL,**
**Employer Below, Respondent**


**MEMORANDUM DECISION**

Petitioner Sidney McKinney, by counsel John H. Shumate, Jr., appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Pinnacle Mining Co./Mission Coal, by counsel Sean Harter, filed a timely response.

The issues presented on appeal are compensability and temporary total disability benefits. The claims administrator rejected the claim on November 8, 2018. On July 28, 2020, the Workers' Compensation Office of Judges ("Office of Judges") reversed the claims administrator's Order and held the claim compensable for cervical and lumbar sprains. The Office of Judges also remanded the claim in order to address temporary total disability benefits. This appeal arises from the Board of Review's Order dated February 19, 2021, in which the Board affirmed the Order of the Office of Judges.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under West Virginia Code § 23-5-15, in relevant part, as follows:

> (c) In reviewing a decision of the Board of Review, the Supreme Court of Appeals shall consider the record provided by the board and give deference to the board's findings, reasoning, and conclusions . . . .

1

. . . .

(e) If the decision of the board effectively represents a reversal of a prior ruling of either the commission or the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning, and conclusions, there is insufficient support to sustain the decision. The court may not conduct a de novo reweighing of the evidentiary record . . . .

*See Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission,* 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a *de novo* standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r,* 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. McKinney was working as a Maintenance Foreman on September 21, 2018, when he slipped on a coal industry substance and fell backwards on a pump house. He first fell onto his buttocks, then onto his head. There were no witnesses to the alleged slip-and-fall incident. He was seen at Jan Care on September 21, 2018. A Patient Care Report indicated that he struck the back of his head on concrete, and he was seeing spots. He also had numbness in his hands and feet. Because he had point tenderness in his lower cervical spine, mid-thoracic spine, and lower lumbar area, he was transported to Raleigh General Hospital.

X-rays of Mr. McKinney's thoracic spine and lumbar spine, and CT scans of the cervical spine and brain were taken at Raleigh General Hospital on September 22, 2018. Alan M. Lintala, M.D., reviewed the x-rays of the thoracic spine and detected mild anterior compression deformities of the T6, T7, T8, and T12 vertebral bodies, which appeared to be chronic. There was no evidence of acute fractures or significant subluxations. Regarding x-rays taken of the lumbar spine, Dr. Lintala detected a mild chronic anterior compression deformity at the L1 vertebral body; mild diffuse narrowing of the lumbar intervertebral disc spaces, with relative sparing of the L4-5 intervertebral disc space; lumbar articular facet joint arthropathy; and no evidence of acute fractures or significant subluxations of the lumbar spine. With respect to the CT scan of Mr. McKinney's cervical spine, Dr. Lintala found no evidence of fractures or subluxations but detected cervical degenerative disc disease and articular facet joint arthropathy, as well as encroachment on the left at C2-3, the right at C3-4, the left at C4-5, and C6-7 lateral recesses by marginal osteophytes and facet hypertrophy. The CT scan taken of the brain detected no evidence of acute intracranial pathology or a skull fracture.

Mr. McKinney completed an Employees' and Physicians' Report of Injury dated September 24, 2018. Michael Muscari, D.O., diagnosed him with an occupational injury to his back with a description of the injury as lumbar and cervical radiculopathy. Dr. Muscari reported

that Mr. McKinney's condition is a direct result of an occupational injury. Mr. McKinney was advised to remain off work from September 24, 2018, to October 8, 2018.

Mr. McKinney returned for a follow-up examination with Family Healthcare Associates on October 1, 2018. He reported neck pain, coldness in his hands, pain in his buttocks, and bilateral leg pain. Mr. McKinney's lumbosacral spine exhibited tenderness on palpation. His lumbosacral spine exhibited spasms of the paraspinal muscles. The assessment was lumbago, concussion with no loss of consciousness, cervicalgia, cervical radiculopathy, and lumbar radiculopathy. He was taken off work for three additional weeks. Mr. McKinney reported continued pain and numbness in follow-up appointments on October 10, 2018, and November 8, 2018.

In an Order dated November 8, 2018, the claims administrator rejected Mr. McKinney's claim for benefits due to a lack of evidence supporting the claim. Mr. McKinney protested the claims administrator's decision and continued to experience constant pain for his condition. At the request of Dr. Muscari, Mr. McKinney was evaluated for physical therapy with The Marden Companies on December 3, 2018, and December 18, 2018. A progress note on December 18, 2018, indicated that he attended six treatment sessions for cervicalgia and cervical radiculopathy. Following physical therapy, Mr. McKinney reported that overall he did not see improvements with his neck, and he continued to have constant cervical spine pain. He stated that "it feels like a knife is stabbing me in the L side of my neck," and rated his cervical spine pain at 3-4/10 at rest and it increases to an 8-9/10 at the worst.

Mr. McKinney was seen by Andrew C. Thymius, D.O., at the West Virginia Pain Institute on January 7, 2019, with chief complaints of neck pain, left arm numbness, and low back pain with bilateral leg numbness. His pain was described as being sharp and burning in nature. He reported weakness and numbness in his legs that radiated down both legs to his feet, with the right leg being worse. Dr. Thymius assessed spinal stenosis of the cervical region, radiculopathy of the cervical region, cervical disc disorder with radiculopathy at C5-C6 and C6-C7, and other cervical disc displacement at the C6-C7 level. Dr. Thymius referred Mr. McKinney to Rajesh Patel, M.D., for a spinal evaluation and surgical consultation.

Office Records dated January 7, 2019, through August 12, 2019, indicate that Dr. Patel's assessment included the following findings:

> Cervical spondylosis at C5-6; cervical neural foraminal stenosis left C5-6 and C6-7; left C7 radiculopathy; early cervical myelopathy; spinal stenosis at L3-4 and L4-5; lumbar degenerative disc disease L5-S1; synovial cyst L3-4; cervical degenerative C4-7; cervical spondylosis; and possible cubital tunnel syndrome of the left upper extremity.

An Operative Report dated February 14, 2019, noted that Dr. Patel performed an anterior discectomy for decompression and fusion at C5-6 and C6-7, as well as anterior cervical instrumentation at C5 through C7 and use of allograft bone. Pre-operative and post-operative diagnoses included early cervical myelopathy, left C7 radiculopathy, left neuroforaminal stenosis

at C5-6 and C6-7, cervical degenerative disc disease, cervical spondylosis, and cervical kyphosis. A Procedure Note dated August 12, 2019, indicated that Dr. Patel performed trigger point injections in Mr. McKinney's left cervical paraspinal region with Kenalog.

In an Age of Injury Analysis report signed on March 2, 2019, Kenneth Fortgang, M.D., indicated that he examined Mr. McKinney's CT scan of the cervical spine taken on September 22, 2018, the day after his injury. Dr. Fortgang noted cervical degenerative disc disease and articular facet arthropathy changes. Encroachment was found in the neural foramen and lateral recesses at C2-3, C3-4, C4-5, and C6-7. Mr. McKinney's degenerative changes, arthropathy, and neurological encroachment findings were deemed to be chronic. There were no acute changes reported. Regarding the CT scan of the brain, Dr. Fortgang reported no acute intracranial abnormalities. Dr. Fortgang also provided an Age of Analysis report of radiographs of Mr. McKinney's lumbar and thoracic spine taken on September 22, 2018. Dr. Fortgang noted spondylotic changes, which are considered chronic for both the thoracic spine and lumbar spine. However, no acute abnormalities were found.

Prasadarao B. Mukkamala, M.D., performed an Independent Medical Evaluation of Mr. McKinney on February 5, 2020, and diagnosed cervical spondyloarthropathy and degenerative lumbar spondyloarthropathy. Dr. Mukkamala noted that Mr. McKinney has naturally occurring, pre-existing degenerative cervical spondyloarthropathy. For the low back, Dr. Mukkamala found pre-existing and naturally occurring degenerative lumbar spondyloarthropathy. Dr. Mukkamala concluded that Mr. McKinney was at maximum medical improvement and opined that the neck surgery performed to treat the degenerative cervical spondyloarthropathy was not related to, and was not required due to, the compensable injury of September 21, 2018.

By Decision dated July 28, 2020, the Office of Judges reversed the claims administrator's Order of November 8, 2018, rejecting the claim, and ruled the claim compensable for cervical and lumbar sprains. The Office of Judges concluded that a preponderance of the evidence of the medical record establishes that Mr. McKinney sustained an injury in the course of and as the result of his employment on September 21, 2018; however, the only compensable diagnoses were cervical and lumbar sprains, as reported by Dr. Mukkamala. The claim was remanded to the claims administrator to determine the period of time for which temporary total disability benefits, if any, should be awarded. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on February 19, 2021.

On appeal before this Court, Mr. McKinney argues that cervical disc displacement, cervical radiculopathy, and lumbar radiculopathy should be added as compensable diagnoses in the claim, as the result of his slip-and-fall at work on September 21, 2018. The Office of Judges relied upon Dr. Mukkamala's finding that Mr. McKinney has preexisting noncompensable degenerative conditions of both the cervical and lumbar spine which are causing his present symptoms. However, the Office of Judges failed to address whether or not Mr. McKinney sustained a discrete new injury, while acknowledging that there is no evidence that he was experiencing any kind of symptoms involving his neck or back prior to the incident of September 21, 2018.

In syllabus point 3 of *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016), this Court created a general rule that:

> [a] noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable.

Syllabus Point 5 of *James A. Moore, Jr. v. ICG Tygart Valley, Inc.*, No. 20-0028 (W. Va. Supreme Court of Appeals, April 28, 2022) states:

> A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

In the case at hand, there was no evidence submitted that Mr. McKinney had any symptoms or problems with his low back or neck prior to his injury of September 21, 2018. Mr. McKinney argues that the compensable injury altered the structure of his lumbar spine and that any progression or need for continued medical treatment after the injury was caused or accelerated by the injury. Because the evidence of record raises a possible natural inference of causation to Mr. McKinney's medical issues, the Board of Review's Order dated February 19, 2021, is reversed. This case is remanded to the Board of Review for a further review of Mr. McKinney's request to add cervical disc displacement, cervical radiculopathy and lumbar radiculopathy to the claim under *Moore*.

Reversed and Remanded with Directions.

**ISSUED: October 18, 2022**

**CONCURRED IN BY:**
Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn